UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ZACHARY ALLEN DUNFEE,                      )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        No.:  3:13-CV-378-TAV-HBG
                                           )
OFFICER DAVID FINCHUM,                     )
individually and in his official capacity; )
OFFICER REBECCA COWAN,                     )
 individually and in her official capacity;)
JOHN AND JANE DOE OFFICERS 1-4,            )
individually and in their official capacities; and )
CITY OF SEVIERVILLE, TENNESSEE,            )
                                           )
            Defendants.                    )


**MEMORANDUM OPINION**

       This civil action is before the Court on defendants David Finchum, Rebecca

Cowan, and the City of Sevierville's Motion for Summary Judgment [Doc. 41], and on

plaintiff Zachary Allen Dunfee's Motion to Alter or Amend Scheduling Order and for

Leave to Amend Complaint [Doc. 56].  The parties have responded and replied to each of

these motions [Docs. 52, 55, 58, 59, 60, 64].  Having reviewed the parties' arguments, the

record in this case, and relevant law, the Court will deny plaintiff's Motion to Alter or

Amend Scheduling Order and for Leave to Amend Complaint, and will grant the Motion

for Summary Judgment of defendants David Finchum, Rebecca Cowan, and the City of

Sevierville.

## I.     BACKGROUND

On June 29, 2012, plaintiff, Zachary Allen Dunfee, was a passenger in a vehicle driven by Cindy Goforth [Doc. 54-1 pp. 2–3; Doc. 54-2 pp. 2–3].  Also riding in the vehicle were Jennifer Brower and her two children [Doc. 54-1 pp. 2–3; Doc. 54-2 pp. 2–3].  While Ms. Goforth was driving, Ms. Brower observed Mr. Dunfee in the back seat turning purple, foaming at the mouth, and seizing [Doc. 54-1 pp. 3–4; Doc. 54-2 pp. 5].  Ms. Goforth pulled the car over into a Food City parking lot where her husband, Gary Goforth, was working at the time [Doc. 54-1 pp. 4; Doc. 54-2 pp. 5].  Both Ms. Goforth and Ms. Brower then called 9-1-1 reporting that Mr. Dunfee was experiencing medical seizures [Doc. 54-1 pp. 4–6; Doc. 54-2 pp. 5–6].  Mr. Goforth left the Food City and also came to the scene in the parking lot [Doc. 54-1].

Officer Finchum was the first responder on scene [Doc. 41-4 p. 2].  He instructed that all the passengers, aside from Mr. Dunfee, should leave the vehicle [*Id.* at 8–11].  Although Mr. Dunfee had stopped seizing when Officer Finchum arrived, he was acting "delirious" [Doc. 54-1 pp. 7–8].  When Officer Finchum approached the backseat of the car, Mr. Dunfee was awake and talking [Doc. 54-8 pp. 4].  However, Mr. Dunfee quickly became combative and began yelling [Doc. 41-4 pp. 3–4].  Officer Finchum believed Mr. Dunfee was suffering from excited delirium [Doc. 55-2 pp. 5].  Officer Finchum attempted to keep Mr. Dunfee in the vehicle by putting his hand on Mr. Dunfee's shoulder [Doc. 54-9 pp. 6].  Mr. Dunfee then twisted Officer Finchum's arm, as well as head butted and kicked Officer Finchum several times [*Id.*; Doc. 55-1; Doc. 55-3 pp. 3].

2

Officer Finchum got on top of Mr. Dunfee in a further attempt to keep him in the car [Doc. 54-9 pp. 7].  Mr. Dunfee responded by kicking Officer Finchum in the crotch [Doc. 54-9 pp. 8].  Officer Finchum then used a taser on Mr. Dunfee [*Id.* at 11; Doc. 54-8 pp. 10–11].  According to a device report detailing taser use, Officer Finchum employed his taser one time on June 29, 2012, for a total of two seconds [Doc. 41-1 pp. 5–9].  Officer Finchum contends that his taser attempt was ineffective; however, it is unclear based on the record whether the taser attempt was effective or not [Doc. 54-9 pp. 11].

As this struggle between Officer Finchum and Mr. Dunfee was ongoing, several other police officers arrived at the scene including Officers Roberts and Nichols.  When Officer Roberts approached Mr. Dunfee in the car, Mr. Dunfee bit Officer Roberts's hand [Doc. 41-3 pp. 3].  Officers Nichol and Roberts then pulled Mr. Dunfee from the vehicle and put him on the pavement [Doc. 41-1; Doc. 54-4 pp. 14–15; Doc. 54-8 pp. 11].  While outside the vehicle, Officer Roberts deployed his taser in stun mode on two occasions targeting Mr. Dunfee [Doc. 54-2 pp. 11; Doc. 54-3 pp. 7; Doc. 54-5 pp. 8–9; Doc. 54-8 pp. 13–15].  Officer Roberts also contends that neither of these taser attempts were successful [Doc. 54-8 p. 15].  He states that the first time he attempted to use it, he "failed to disengage the safety," and the second time, he is "unsure if contact was made" [*Id.*].

Meanwhile, Officer Finchum was laying on top of Mr. Dunfee while several other officers assisted in holding down Mr. Dunfee's arms and legs [Doc. 41-1; Doc. 55-2 pp. 16].  Throughout this time, Mr. Dunfee continued to scream, flail his arms, and kick his legs [Doc. 41-1; Doc. 54-4 pp. 16; Doc. 54-5 pp. 12].  Officer Cowan arrived on scene

3

and assisted the other officers in holding down Mr. Dunfee's legs and hips in order to prevent him from kicking [Doc. 41-1]. Mr. Dunfee was then secured onto a medical cot, and EMS took him to the hospital [*Id.*]. Mr. Dunfee was not charged with a criminal offense for the events that occurred on June 29, 2012 [Doc. 54-8 pp. 19]. He suffered numerous injuries as a result of this incident, including an injury that is consistent with being tased [Doc. 54-4 pp. 21–22; Doc. 54-10 pp. 51].

Mr. Dunfee filed this action, asserting claims for excessive use of force, unreasonable seizure, and failure to implement appropriate policies, customs, and practices, as well as state-law claims [Doc. 15]. Defendants the City of Sevierville, Tennessee, as well as David Finchum and Rebecca Cowan, in their individual and official capacities, move the Court for summary judgment [Doc. 41]. Plaintiff moves the Court to alter or amend scheduling order and for leave to amend complaint [Doc. 56].

## II.    MOTION TO AMEND[1]

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v.*

---

[1] While the motion to dismiss was filed before the motion to amend, motions to amend shall be freely granted. Fed. R. Civ. P. 15. Moreover, granting a motion to dismiss before addressing a pending motion to amend can be an abuse of discretion. *Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991).

4

*Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

### A.    Proposed Claims Against John and Jane Doe Officers

In the first amended complaint, plaintiff includes John and Jane Doe officers 1-4 as defendants and states that plaintiff does not know the true identity of these officers [Doc. 15 ¶ 5]. Plaintiff alleges that each of the John and Jane Doe defendants are liable for injuries [*Id.*]. Plaintiff now seeks to further amend the complaint to identify John and Jane Doe officers as Matt Nicol, Jamie Roberts, and Steve Ford [Doc. 56-1]. The proposed amended complaint asserts the following claims against Officers Roberts, Nicol, and Ford: use of excessive force and unreasonable seizure, in their official and individual capacities, under 42 U.S.C. § 1983, and negligence, false imprisonment, and assault under Tennessee law [*Id.*].

"Where an amendment to a complaint would add a new party, the amendment must come within the statute of limitations period or relate back to the original filing date of the complaint." *Lovelace v. City of Memphis Police Dep't*, No. 08-2776, 2010 WL 711190, at *3 (W.D. Tenn. Feb. 24, 2010). "Naming a John Doe defendant cannot save a pleading from this requirement." *Id.*; *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

5

The statute of limitations period for § 1983 actions is one year. *Sharpe v. Cureton*, 319 F. 3d 259, 265 (6th Cir. 2003). A party must bring claims for negligence, false imprisonment, and assault under Tennessee law within one year as well. *Campbell v. McMinn Cnty.*, No. 1:10-CV-278, 2011 WL 5921431, at *3 (E.D. Tenn. Nov. 28, 2011); *Johnson v. Dollar Gen. Corp.*, 2007 WL 2746952, at *3 (E.D. Tenn. Sept. 20, 2007); *see also* Tenn. Code Ann. § 28-3-104. The proposed amended complaint asserts that the actions underlying these claims took place on June 29, 2012 [Doc. 56-1]. Plaintiffs filed the motion to amend more than one year after the date of the alleged injury; thus, unless plaintiffs' claims against Officers Roberts, Nicol, and Ford relate back to the date of the original complaint—June 28, 2013—the Court must deny plaintiff's motion to amend because of futility.

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Where an amended pleading changes a party or a party's name, an amendment relates back to the original pleading if the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[,]"

> and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have

6

been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Defendants assert plaintiff fails to satisfy Rule 15(c)(1)(C)(ii), that is, but for the mistake in identity, the proposed new defendant knew or should have known that an action would have been brought against her [Doc. 59]. "The Sixth Circuit has long held the position that a complete lack of knowledge as to the identity of a defendant—a suit against a Doe defendant, for example—is not equivalent to a 'mistake' concerning the actual defendant's identity." *Flick v. Lake Cnty. Jail*, No. 1:10-CV-532, 2011 WL 3502366, at *1 (N.D. Ohio Aug. 10, 2011) (citation omitted); *see also Moore v. State of Tenn.*, 267 F. App'x 450, 455 (6th Cir. 2008) ("In this court, a plaintiff's lack of knowledge pertaining to an intended defendant's knowledge does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." (citations omitted)). "[A]n amendment adding a defendant in place of a John Doe does not relate back to the original complaint and thus is not exempted from the applicable statute of limitations." *Cooper v. Rhea Cnty., Tenn.*, 301 F.R.D. 195, 199 (E.D. Tenn. 2014).

Thus, pursuant to Sixth Circuit precedent, the claims set forth in the proposed amended complaint against these newly-named defendants would not relate back to the date of the original complaint, and it would be futile to allow plaintiffs to name Officers

Roberts, Nicol, and Ford as defendants.[2]  *See Miller*, 408 F.3d at 817 ("A court need not grant leave to amend, however, where the amendment would be futile." (citation omitted)).

In light of the Court's decision to deny the motion for leave to amend the complaint, the Court addresses a related argument defendants set forth in their reply brief to the motion for summary judgment [Doc. 55 p. 2–3].  Defendants correctly assert that plaintiff has only sued Officers Finchum and Cowan, and plaintiff may not seek relief from those defendants for the allegedly unconstitutional acts of non-party law

---

[2] In *Krupski*, the Supreme Court addressed Rule 15(c)'s mistake prong.  The Supreme Court broadly defined "mistake" as "an error, misconception, or misunderstanding; an erroneous belief," and provided the following example:

> A plaintiff may know that a prospective defendant-call him party A-exists, while erroneously believing him to have the status of party B.  Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim.  If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.

130 S. Ct. at 2494 (citations omitted).

*Krupski*, however, is distinguishable from this case.  In this case, plaintiff knew who he wanted to sue; he just did not know their names.  Indeed, he intentionally chose to sue "John and Jane Doe" because he did not know their identities.  "*Krupski*, in contrast, addressed the situation where a party knew of the existence of two parties, but, confused as to their roles in a transaction, mistakenly sued the wrong one."  *Flick*, 2011 WL 3502366, at *2; *see also Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740 (2011) (applying the Sixth Circuit's rule and distinguishing *Krupski* where the plaintiff originally sued "Kentucky State Police Officers, Names Unknown" and later amended the complaint to name specific individuals); *Burdine v. Kaiser*, No. 3:09CV1026, 2010 WL 2606257 (N.D. Ohio June 25, 2010) (applying the Sixth Circuit's rule and distinguishing *Krupski* where the plaintiff did not know the identities of the parties until after the statute of limitations period ran).

8

enforcement officers. Even so, the Court will consider the actions of non-party law enforcement officers to the extent that they are relevant to claims against the City of Sevierville. *See Carpenter v. Doe*, 2010 WL 4922640, No. 10-2425-STA (W.D. Tenn. Nov. 29, 2010) (analyzing municipality liability for alleged constitutional violations of John Doe officers even after dismissing the underlying claims against the John Doe officers).

### B. Proposed Civil Conspiracy Claim

In plaintiff's revised proposed amended complaint, plaintiff advances a new civil conspiracy claim against all defendants [Doc. 60]. Plaintiff proposes this civil conspiracy claim for the first time in plaintiff's reply brief in support of plaintiff's Motion to Alter or Amend Scheduling Order and For Leave to Amend Complaint [*Id.*].

"It is well settled that a movant cannot raise new issues for the first time in a reply brief." *Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*, No. 3:11-CV-608, 2012 WL 1108125, at *7 (E.D. Tenn. Apr. 2, 2012); *see also Scottsdale Ins. Co. v. Flowers*, 513 F. 3d 546, 553 (6th Cir. 2008) (noting that a party waives an issue raised for the first time in a reply brief or motion for reconsideration). Additionally, the Local Rules of this District provide that reply briefs are not necessary and advise that "[a] reply brief shall . . . directly reply to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1(c). The plaintiff raised the proposed civil conspiracy claim for the first time in the reply brief, and consequently, as a matter of fairness and procedure, the Court declines to address this argument.

9

## III.    MOTION TO DISMISS

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."  *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317).  To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder.  *Anderson*, 477 U.S. at 250.  The Court does not weigh the

evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### A. Qualified Immunity

Officers Finchum and Cowan assert they are entitled to qualified immunity [Docs. 21, 30]. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2080 (2011) (citation omitted). Qualified immunity is an affirmative defense,[3] and once raised, the plaintiff must show that the official violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *Id.* at 2083 (citation and internal quotation mark omitted). The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the

---

[3] Defendants pleaded qualified immunity in their answer [Doc. 20].

qualified-immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

In engaging in the qualified-immunity analysis, "[a] court is to use its 'sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand.'" *Walker v. City of Cookeville*, No. 2:12-00059, 2014 WL 919249, at *8 (M.D. Tenn. Mar. 7, 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, the Court begins by addressing the easier of the two inquires in this case; that is, the clearly-established prong. *See Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012) (electing to address "the easier of the two questions"); *al-Kidd*, 131 S. Ct. at 2080 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" (citation omitted)).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (alteration in original) (citation omitted). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 231–44. "Although it need not be the case that 'the very action in question has previously been held unlawful, . . . in

12

light of the pre-existing law the unlawfulness must be apparent.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992) (omission in original) (citation omitted).

In order to demonstrate that Officers Finchum and Cowan violated a clearly established right, plaintiff must "show the prior articulation of a prohibition against the type of . . . force exerted." *Champion v. Outlook Nashville, Inc.*, 380 F. 3d 893, 902 (6th Cir. 2004). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). When deciding whether a right is clearly established, the reviewing court must not define the right at "a high level of generality," but at "a reasonably particularized" level of generality. *Hagans*, 695 F.3d at 508–09.

Before turning to the clearly established analysis, the Court acknowledges that the parties spent a large portion of the briefing on the distinction between the appropriate constitutional standard applied when police officers are acting to aid in a medical emergency or with a law enforcement purpose. When a responder to an emergency is acting to provide medical care, any force used in the process is analyzed under the standards of the Fourteenth Amendment substantive due process clause, rather than the Fourth Amendment prohibition against unreasonable searches and seizures. *See Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 221 (6th Cir. 2007) (noting that only when a responder is acting for the purpose of investigating or enforcing the law

13

will the Fourth Amendment apply). *Compare Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that a Fourth Amendment seizure occurs "when there is a government termination of freedom of movement through means intentionally applied") (citations omitted), *and Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that a Fourth Amendment reasonableness test "requires careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake") *with Darrah v. City of Oak Park*, 255 F.3d 301, 305–06 (6th Cir. 2001) (holding that a Fourteenth Amendment analysis requires determining whether government conduct "shocks the conscience"). Because the Court finds that it was not clearly established that plaintiff has the right to be free from being tased and held down, under the Fourth or Fourteenth Amendment, the Court declines to address the issue of what constitutional standard applies.

### 1. Officer Finchum

The Court finds that the appropriate inquiry here is whether, on June 29, 2012, it was clearly established that a person suffering from a medical condition, who became combative toward police officers responding to a call for medical assistance, had a right not to be tased and held down by a police officer.

Plaintiff bears the ultimate burden of proof as to both elements of the qualified-immunity analysis. *Cockrell*, 468 F. App'x at 494. Plaintiff has not presented sufficient pre-existing law that clearly establishes the contours of plaintiff's rights such that every

reasonable officer would have known Officer Finchum's actions violated plaintiff's rights in this factual context.[4] *Feathers*, 319 F.3d. at 848; *Russo*, 953 F.2d at 1043.

While the Court declines to address whether Officer Finchum's conduct was constitutional, the pre-existing law leans toward constitutionality. Shortly before the incident underlying this case, in June 2012, the Sixth Circuit addressed a factual situation similar to the one presented here in *Caie v. West Bloomfield Township*, 485 F. A'ppx 92 (6th Cir. 2012). *Caie* involved officers who needed to take physical control of the plaintiff in order to transport him to the hospital for a mental evaluation. *Id.* at 94. The plaintiff was running around, "flailing his arms violently," and threatening the police officers. *Id.* When the officers were unable to secure him using only the force of their bodies, one of the officers deployed his taser device, but the taser did not make contact with the plaintiff. *Id.* Although this taser attempt failed, the officers were able to force the plaintiff to the ground and hold him there. *Id.* However, when the plaintiff refused to

---

[4] Plaintiff cites to decisions of the Sixth Circuit in *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004), and *McKenna v. Edgell*, 617 F.3d 432 (6th Cir. 2010), but the Court finds them both distinguishable.

In *Champion*, while responding to call regarding potential criminal activity, and after handcuffing and binding the ankles of a nonverbal, autistic suspect, the police officers deployed pepper spray and continued to put pressure on the suspect, resulting in his death. *Champion*, 380 F.3d at 896. The Sixth Circuit found that the police violated a clearly established right. *Id.* at 905. In the instant case, Officer Finchum held down and tased plaintiff because plaintiff was continuously resisting the police officers. There is no indication that plaintiff was tased or hurt in anyway by Officer Finchum once plaintiff was under control.

In *McKenna*, the Sixth Circuit held that qualified immunity was a question for the jury because there were strikingly different accounts of the events. *McKenna*, 617 F.3d at 435–436, 441. However, in this case, there are a minimal number of disputed facts, and the Court can make a finding looking at those facts in the light most favorable to plaintiff.

15

follow the direction of the officers to move his hands so that they could handcuff him, one of the officers successfully tased the plaintiff. *Id.* After tasing the plaintiff, the officers escorted him to an ambulance for transport to the hospital. *Id.* at 95.

The Sixth Circuit determined that the officers' behavior was constitutional under both the Fourth and Fourteenth Amendments. *Id.* at 96–97. The Sixth Circuit emphasized that under the circumstances it was reasonable to assume there was a threat to the officers' safety, to the plaintiff himself, and to the safety of others. *Id.* at 96. It found the second attempt at tasing the plaintiff was constitutional even though—at this point in the altercation—the plaintiff was "arguably subdued" when the officer employed the taser, because the plaintiff continued to be uncooperative. *Id.* at 96–97.

Also instructive are the cases from district courts within the Sixth Circuit that have expressly found a police officer's single use of a taser objectively reasonable under factually similar circumstances. *See, e.g.*, *Alexander v. City of Shelby Twp.*, No. 07–cv–14741, 2009 WL 3241974, at *1–*3 (E.D. Mich. Oct. 8, 2009) (holding that officer's single use of taser in drive-stun mode was not unreasonable, or in the alternative, not clearly established, where plaintiff ignored multiple requests to enter the patrol car and where plaintiff previously displayed "belligerent" and "threatening" behavior); *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 478–481 (E.D. Tenn. 2006) (holding that the officer's use of a taser and act of forcing the plaintiff to the ground was objectively reasonable when the plaintiff "continuously struggled and resisted the officers" including biting and head butting them); *Wylie v. Overby,* No. 05–CV–71945–DT, 2006 WL

16

1007643, at *5–*9 (E.D. Mich. April 14, 2006) (holding that use of taser was not excessive force because of plaintiff's "assaultive behavior" in resisting arrest and his attempts to evade arrest).

For Officer Finchum to have violated a clearly established right, it would have to have been clear to every reasonable officer on June 29, 2012, that a person suffering from a medical condition, who became combative toward police officers responding to a call for medical assistance, had a right not to be subjected to the force Officer Finchum employed on that day. The force Officer Finchum used against plaintiff was as follows: (1) placing a hand on plaintiff to keep him in the vehicle; (2) laying on top of plaintiff in the car; (3) tasing plaintiff in the car; (4) again laying down on plaintiff while outside the vehicle. All the while plaintiff headbutted and kicked Officer Finchum as well as other officers at the scene. Similar to *Caie*, in light of the circumstances in the present case, it is reasonable to assume there was a threat to the officers' safety, to the plaintiff himself, and to the safety of others. 485 F. A'ppx at 96.

Based on the pre-existing law holding that conduct similar to Officer Finchum's alleged use of force on June 2012 is constitutional, the Court finds that the contours of the right Officer Finchum is alleged to have violated were not so clear in June 2012 that every reasonable officer would have known that Officer Finchum's actions were unconstitutional. Thus, plaintiff fails to meet the clearly established prong to defeat qualified immunity. In light of this finding, the Court declines to address the second

17

prong of qualified immunity, that is whether the alleged actions of Officer Finchum in June 2012 were constitutional.

Accordingly, because not every reasonable officer would have understood that Officer Finchum's conduct in tasing and holding down plaintiff violated the Constitution under law existing as of June 29, 2012, the Court finds Officer Finchum is entitled to qualified immunity.

## 2.    Officer Cowan

The Court finds that the appropriate inquiry here is whether, on June 29, 2012, it was clearly established that a person suffering from a medical condition, who became combative toward police officers responding to a call for medical assistance, had a right not to be held down by a police officer.  The only force Officer Cowan used against plaintiff was to help hold his legs and hips while plaintiff was actively fighting.  In light of the previously discussed analysis of Officer Finchum's actions—which also involved holding down plaintiff among other actions more severe—not every reasonable officer would have understood that Officer Cowan's conduct in holding down plaintiff violated the Constitution under law existing as of June 29, 2012.  The Court finds Officer Cowan is entitled to qualified immunity.

## B.    Official Capacity

The Court finds it appropriate to dismiss plaintiff's official-capacity claims against Officers Finchum and Cowan as redundant, and plaintiff concedes this proposition [Doc. 58 p. 23].  Pursuant to federal law, "[a]n official capacity claim filed against a public

18

employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The City of Sevierville, Tennessee, is a defendant in this action and has thus received notice of the claims against it.

### C. City of Sevierville

Plaintiff asserts several claims against the City of Sevierville. Plaintiff alleges that the City of Sevierville failed to adequately train and supervise Officers Finchum and Cowan. Additionally, plaintiff alleges that the City of Sevierville adopted and implemented reckless and careless policies, customs, procedures, or practices that ultimately were the cause of his injuries.

### 1. Failure to Train and Supervise Officers Finchum and Cowan[5]

Plaintiff asserts that the City of Sevierville failed to train and supervise Officers Finchum and Cowan on the proper way to handle individuals with medical conditions, on the reasonable use of force, and on the proper use of taser guns. Defendants cite to *Hagans*, in which the Sixth Circuit said, "[t]o hold the [municipal entity] liable, [the plaintiff] must show that its 'failure to train' officers on the proper use of tasers 'amounts to deliberate indifference.'" 695 F.3d at 511 (citation omitted). "But 'a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.'" *Id.* (citation

---

[5] The amended complaint also includes a failure to train and supervise John and Jane Doe Officers 1-4 [Doc. 15]. The Court is denying the motion to amend the complaint to include Officers Roberts, Nicol, and Ford. Therefore, the Court addresses the claim of failure to train and supervise only as to Officers Finchum and Cowan.

omitted).  This reasoning, which plaintiff does not contest, is applicable here, where, as in *Hagans*, Officers Finchum and Cowan did not violate a right clearly established at the time of the challenged conduct.  *Cf. Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) ("[W]hen an officer violates a plaintiff's rights that are not clearly established, but a city's policy was the moving force behind the constitutional violation, the municipality may be liable even though the individual officer is immune."); *but see Modd v. Cnty. of Ottawa*, No. 1:10-CV-337, 2012 WL 5398797, at *19 (W.D. Mich. Aug. 24, 2012) (noting that the "statements about municipal liability" in *Gray* are "clearly *dictum*" and that the Sixth Circuit "continues to absolve municipal employers of liability, especially in failure-to-train cases, where its officers have been granted qualified immunity" (citation omitted)).

### 2.    Policies, Customs, Procedures, and Practices

Plaintiff also alleges that the City of Sevierville "implicitly or explicitly adopted and implemented careless and reckless policies, customs, procedures, or practices" that included allowing police officers "to handle medical emergencies without having adequate training," "to use excessive force, including the use of a Taser gun, and unreasonably seize individuals when dealing with a medical emergency, instead of obtaining appropriate care" [Doc. 15].  This claim was not specific to Officers Finchum and Cowan.  Plaintiff referred generally to "employees" in his amended complaint [*Id.*].  Although the Court will not allow leave to further amend the complaint, the Court will consider the actions of non-party law enforcement officers to the extent that they are

20

relevant to the policy and customs claims against the City of Sevierville. *See Carpenter*, 2010 WL 4922640 (analyzing municipality liability for alleged constitutional violations of John Doe officers even after dismissing the underlying claims against the John Doe officers).

In order to prevail on this claim, plaintiff must demonstrate "an affirmative link between the policy and the particular constitutional violation alleged." *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). "Plaintiff must prove that his particular injuries were incurred because of the execution of the policy or custom." *Nicholson v. City of Chattanooga*, No. 1:04-CV-168, 2005 WL 2657001, at *4 (E.D. Tenn. October 18, 2005) (quotations and citations omitted). Additionally, plaintiff must prove that the municipality established a policy that was "deliberately indifferent" to the plaintiff's constitutional rights. *Id.* at *4. "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of harm." *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001).

There is nothing in the record to demonstrate that the City of Sevierville established any custom or policy that was deliberately indifferent to plaintiff's constitutional rights. In the absence of contrary evidence, the Court accepts the testimony of Chief Myers stating that there is no "custom or history of excessive use of force in medical emergencies" by officers in the Sevierville Police Department [Doc. 42 p. 5]. Plaintiff has produced no evidence that the City of Sevierville knew of or

21

disregarded any risk of harm similar to the alleged harm to plaintiff. Conclusory allegations in a complaint will not suffice to create a genuine issue of material fact on summary judgment. *Nicholson*, 2005 WL 2657001, at *4.

The Court finds that the City of Sevierville was not deliberately indifferent to plaintiff's constitutional rights. Thus, the City of Sevierville is entitled to summary judgment. The Court declines to address whether any of plaintiff's constitutional rights were actually violated.

### D. State-Law Claims

Plaintiff alleges state-law claims in his complaint. While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims under the circumstances presented by this case, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *see, e.g., Jackson v. Town of Caryville, Tenn.*, Nos. 3:10-CV-153, 3:10-CV-240, 2011 WL 5143057, at *10 (E.D. Tenn. Oct. 28, 2011). Having found the federal claims should be dismissed on defendants' motion for summary judgment, pursuant to § 1367(c), and in the exercise of its discretion and in the interests of comity, the Court will decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26 (1966).

## IV. CONCLUSION

For the reasons explained, the Court will **DENY** plaintiff's Motion to Alter or Amend Scheduling Order and for Leave to Amend Complaint, and **GRANT** the Motion for Summary Judgment of defendants David Finchum, Rebecca Cowan, and the City of Sevierville and **DISMISS** this action. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE